# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# CHARLESTON DIVISION

WILLIE SLOCUM, JR.,

    Movant,

v.                                                                Case No. 2:17-cv-03759
                                                                 Case No. 2:13-cr-00274-1

UNITED STATES OF AMERICA,

    Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). The matter is before the Court on remand from the United States Court of Appeals for the Fourth Circuit for resolution of Movant/Defendant Willie Slocum, Jr.'s (hereinafter "Slocum") ineffective assistance of counsel claim concerning a double jeopardy violation stemming from his conviction on two drug conspiracy counts, as initially raised in a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (ECF No. 165).

## I.    RELEVANT PROCEDURAL HISTORY

As noted by the supplemental brief of the United States of America (hereinafter "the Government"), Count One of the second superseding indictment herein charged Slocum with conspiracy to distribute more than one kilogram of heroin and exposed him to a sentencing range of 10 years to life imprisonment. (ECF No. 29 at 1; ECF No. 273 at

1-2). Count Two of the second superseding indictment charged Slocum with conspiracy to distribute a quantity of oxycodone and exposed him to a sentencing range of up to 20 years in prison. (*Id.* at 2). The indictment charged both conspiracies as occurring '[f]rom before May 2012 through October 2013, at or near Charleston, Kanawha County, West Virginia, and within the Southern District of West Virginia and elsewhere." (*Id.* at 1-2). Slocum did not raise a double jeopardy challenge to these two counts prior to trial, and he was convicted by a jury of both counts, along with the other three counts contained in the second superseding indictment, consisting of felon in possession and witness intimidation charges. Nor did he raise a double jeopardy claim on direct appeal.

Rather, in a timely filed Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, Slocum asserted, among numerous other grounds for relief, a claim of ineffective assistance of counsel grounded in the failure to mount a double jeopardy challenge to the two conspiracy charges. (ECF No. 165 at 93-105). Initially, the presiding District Judge denied the § 2255 motion on that basis and others. However, on appeal, the United States Court of Appeals for the Fourth Circuit held that, under the totality of the circumstances, Counts One and Two were multiplicitous and demonstrated a double jeopardy violation. *United States v. Slocum*, 106 F.4th 308, 316 (2024).

Nonetheless, the appellate court further held that even if the relevant authority at the time of trial strongly suggested that the indictment was multiplicitous, "an ineffective assistance analysis requires deferral to counsel's strategic decisions made after investigating the law and facts." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 689-91 (1984)). Thus, the Court remanded the case for an evidentiary hearing to develop sufficient facts from which the District Court could determine whether trial counsel had a "reasoned strategy or lack thereof" in not raising a double jeopardy claim. *Id.* at 317-

318. The matter was then referred to the undersigned and an evidentiary hearing was held on February 25, 2025. Slocum appeared in person and by his court-appointed counsel, Olubunmi T. Kusimo-Frazier. The Government is represented by Assistant United States Attorney Joshua C. Hanks.

During the evidentiary hearing, the Court heard testimony from Slocum's former trial counsel, Sanford A. Schulman ("Schulman"), a criminal defense attorney from Detroit, Michigan, and John D. Wooten, Jr. ("Wooten"), who was local counsel. Slocum also presented the proposed expert opinion testimony of DeAndra Burton ("Burton"), a criminal defense attorney from Morgantown, West Virginia. At the conclusion of the hearing, the undersigned took the matter under advisement and directed the parties to file written submissions setting forth their positions on the ineffective assistance of counsel claim following receipt of the hearing transcript. The parties filed their respective briefs on May 11, 2025 (ECF Nos. 273, 274) and the matter is ripe for resolution.

## II. APPLICABLE STANDARD OF REVIEW

To warrant habeas relief based on ineffective assistance of counsel, a movant must satisfy the two-prong test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong is competence; movant must show that the representation fell below an objective standard of reasonableness. 466 U.S. at 687-91. There is a strong presumption that the conduct of counsel was within the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel. *Id.* at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . .

3

> [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id*. at 690. This inquiry focuses on whether defense counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "The question is whether counsel made errors so fundamental that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Id*. at 88.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. In the instant case, the Fourth Circuit previously found that, if an evidentiary hearing demonstrated that trial counsel's performance herein was deficient, Slocum "was necessarily prejudiced by that performance given our recognition of a Double Jeopardy violation." *Slocum*, 106 F.4th at 318.

As further noted by the Government, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." (ECF No. 273 at 3, citing *Strickland*, 466 U.S. at 690). Therefore, "a successful challenge to counsel's tactical decisions requires proof that the strategy 'made no sense or was unreasonable.'" (*Id.*, quoting *United States v. Freeman*, 24 F.4th 320, 330 (4th Cir. 2022) (quoting *Vinson v. True*, 436 F.3d 412, 419 (4th Cir. 2006))). Thus, the sole inquiry before this Court is whether trial counsel's failure to mount a double jeopardy challenge to the two separate drug conspiracy charges in Slocum's indictment was reasonable trial strategy.

4

## III. DISCUSSION

The reasonableness of Schulman's performance turns on an understanding of the existing case law at the time of Slocum's trial. As noted by Slocum's post-hearing brief (and by the Fourth Circuit's remand opinion), ineffective assistance of counsel may be demonstrated under *Strickland* if:

> "existing case law" "sufficiently foreshadowed" the double jeopardy challenge such that trial counsel's failure to raise it rendered his performance constitutionally deficient. *Morris,* 917 F.3d at 824 (quoting *Shaw v. Wilson*, 721 F.3d 908, 916-17 (7th Cir. 2013)). Counsel must raise an argument where "relevant authority strongly suggest[s]" it. *Carthorne*, 878 F.3d at 466. But to be constitutionally effective, counsel need not identify all plausible arguments, including those that have never been raised before or which would require an extension in precedent. *See Morris*, 917 F.3d at 826. It is "not enough . . . that the law on this question was unsettled at the time . . . or that an objection would have been plausible and nonfrivolous."

*United States v. Palacios*, 982 F.3d 920, 925 (4th Cir. 2020), citing *United States v. Morris*, 917 F.3d 818 (2019); *see also Slocum*, 106 F.4th at 317. (ECF No. 274 at 5). Thus, the undersigned will first examine the relevant authority decided at the time of Slocum's trial.

The Double Jeopardy Clause of the Fifth Amendment provides that no one shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Thus, the Double Jeopardy Clause creates "the right to be immune from multiple prosecutions for the same offense." *United States v. Ragins*, 840 F.2d 1184, 1192 (4th Cir. 1988). Multiplicity includes "charging a single offense in more than one count in an indictment." *United States v. Colton*, 231 F.3d 890, 908 (4th Cir. 2000) (internal quotations and citations omitted); *see also Slocum*, 106 F.4th at 312 ("A multiplicitous indictment is one that charges a single offense in multiple counts.")

5

The seminal Supreme Court decision concerning whether double jeopardy is implicated is *Blockburger v. United States*, 284 U.S. 299, 304 (1932), which established the "same evidence test" to determine whether, when dealing with multiple charges, "each provision requires proof of a fact that the other does not." However, in 1942, the Supreme Court decided *Braverman v. United States*, in which the Court addressed double jeopardy in the context of multiple conspiracy charges. The Court held that the determinative issue of whether one or more conspiracies exist turns on whether there is a single agreement to commit one or more substantive crimes. 317 U.S. 49 (1942). The Court further stated that "[t]he gist of the crime of conspiracy as defined by the statute is the agreement or confederation of the conspirators to commit one or more unlawful acts where 'one or more of such parties do any act to effect the object of the conspiracy.'" *Id*. at 53. Thus, "[t]he single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute . . . . For such a violation only the single penalty prescribed by the statute can be imposed." *Id*. at 54.

In *United States v. MacDougall*, 790 F.2d 1135 (1986), the Fourth Circuit addressed a claim that the government had impermissibly divided a single conspiracy into two conspiracies by charging a defendant with a violation of the conspiracy statute in two separate indictments. Relying upon *Braverman*, the Court recognized that 'the double jeopardy clause clearly prohibits the division of a single criminal conspiracy into multiple violations of a conspiracy statute." *Id*. at 1144. The *MacDougall* Court, however, noted that the *Blockburger* "same evidence" test "is of limited value in deciding double jeopardy claims raised with respect to successive conspiracy prosecutions." *Id*. Thus, the Court adopted a "totality of the circumstances" test, recognized by "many courts," which uses a "flexible application" of the following five factors:

6

> 1) time periods in which the alleged activities of the conspiracy occurred;
> 2) the statutory offenses charged in the indictment(s);
> 3) the places where the alleged activities occurred;
> 4) the persons acting as co-conspirators; and
> 5) the overt acts or any other descriptions of the offenses charged which indicate the nature and scope of the activities to be prosecuted.

*Id*. (other citations omitted). Focusing on the overlap of personnel factor, the *MacDougall* Court noted that "[t]here is no rigid formula for determining at what level the overlap of two conspiracies become one. Rather, the issue is whether the evidence of overlapping personnel established a single conspiratorial scheme." *Id*. at 1145.

As noted by the Fourth Circuit in its remand opinion herein, *MacDougall*'s reliance on "overt acts" became problematic in drug conspiracy cases, once the Supreme Court and Fourth Circuit held that "it is unnecessary either to allege or prove an overt act in a conspiracy charged under 21 U.S.C. § 846." *Slocum*, 106 F4th at 314, citing *United States v. Shabani*, 513 U.S. 10, 17 (1993) and *United States v. Clark*, 928 F.2d 639, 641 (4th Cir. 1991). Nonetheless, the Fourth Circuit has continued to use the "totality of the circumstances" test to determine whether a single conspiracy exists based on "one overall agreement" or "one general business venture." *Slocum*, 106 F.4th at 314-15, citing *United States v. Stockton*, 349 F.3d 755, 762 (4th Cir. 2003) (other citations omitted).

In this vein, the Court has "long recognized single conspiracies with multiple objects concerning different controlled substances." *Id*.; *see also, e.g., United States v. Mackins*, 315 F.3d 399 (4th Cir. 2003) (conspiracy to possess with intent to distribute cocaine, cocaine base, heroin, and marijuana); *United States v. Banks*, 10 F.3d 1044 (4th Cir. 1993) (conspiracy with intent to distribute heroin, cocaine, and crack cocaine); *but see United States v. Broce,* 488 U.S. 563, 570-71 (1989) (two separate agreements embracing separate objectives supported separate conspiracy offenses); *cf United States*

*v. Ivey*, 722 F. App'x 336 (4th Cir. 2018) (finding separate conspiracy offenses based on different drugs using *Blockburger* test) (unpublished) (called into doubt by *Slocum*, 106 F.4th at 315 n.3). This inquiry turns on "the factual circumstances that inform whether a defendant entered into one overall agreement to commit multiple crimes or, instead, multiple agreements to commit separate crimes." *Slocum*, 106 F.4th at 315. At bottom, our appellate court has recognized that "'a single overall conspiracy can be distinguished from multiple independent conspiracies based on the overlap of actors, methods, and goals.'" *Id.*, citing *United States v. Bartko*, 728 F.3d 327, 344-45 (4th Cir. 2013) (quoting *Stockton*, 349 F.3d at 762).

As found by the Fourth Circuit, and agreed to by the parties herein, "significant factual overlap' exists between the charged conspiracies, specifically with respect to time periods, locations, and co-conspirators." *Slocum*, 106 F.4th at 315-16. Nonetheless, during the evidentiary hearing, Schulman testified that he was aware of the relevant case law, including *Braverman* and *MacDougall*, but he believed, even under that authority, that the two conspiracies were distinct, and he did not believe that a double jeopardy argument would be meritorious. (ECF Nos. 272, 273, Ex. 1, and 274, Ex. 1 at 31-34, 77).[1] Specifically, he testified that some of the witnesses indicated that they had only bought or distributed heroin or oxycodone pills for Slocum and, thus, he thought that "just on its face these are multiple conspiracies based on the types of drugs and individual transactions." (ECF No. 272 at 55). He believed that these "distinctions in the drugs and the type of witnesses and the specific transactions" made the conspiracies different. (*Id.*

---

[1] Both parties attached full copies of the evidentiary hearing transcript as exhibits to their post-trial briefs. A full copy of the transcript is also docketed in ECF No. 272. For ease of reference, from this point forward the undersigned will cite to the version of the transcript in ECF No. 272 using the actual pagination of the transcript, rather that the pagination in the CM/ECF header at the top of each page.

at 59-60, 77-78).

He further testified that, even if the factors suggested a double jeopardy violation, he believed it was tactically best for the jury to consider two separate conspiracy charges and to force the government to prove both counts separately. (*Id.* at 34-35). He stated that this approach increased the chances of an acquittal on at least one count and, arguably, could reduce Slocum's exposure to a mandatory minimum sentence and overall sentence if the jury acquitted him on the heroin conspiracy charge, which Schulman described as "the golden ticket." (*Id.* at 35, 46). Thus, he claimed that, for strategic reasons, he did not include a double jeopardy challenge in his pre-trial motions. (*Id.* at 34-35).

As noted by the Government, "based upon the anticipated trial evidence, Schulman believed that 'the likelihood of conviction was extremely high . . . but if there was a chance of getting something less than all or nothing, [his] thoughts were to go for it." (ECF No. 274 at 4, quoting from ECF No. 272 at 46). He believed there was a chance of acquittal, in part on the evidence, as well as the possibility "that jurors often will compromise a verdict[.]" (ECF No. 272 at 75-76). Schulman further testified: "I was most concerned about the reality that two bites at the apple, so to speak, gives us two chances of getting one of the counts dismissed, and that's the big one, and I thought less baggage on Count I is better for him" given the difference in what the sentence could be. (ECF No. 272 at 49, 51-52). Even in retrospect, Schulman stated that, based on the facts in the case, having two separate counts was "a far better strategy than letting the Government prove one count" and he had "no doubt about it" being "the right decision." (*Id.* at 65, 67). In essence, it "improved his chances of minimizing incarceration." (*Id.* at 67).

9

Schulman admitted, however, that the failure to make this double jeopardy challenge resulted in Slocum's loss of the right to raise the issue on direct appeal. (*Id.* at 14, 70-72). He further acknowledged that there was no agreement or stipulation concerning Slocum's sentence, but he correctly relied upon his extensive experience as a federal criminal defense attorney to predict that the presiding District Judge would impose concurrent, rather than consecutive, sentences under the Guidelines and § 3553(a) factors. (*Id.* at 36, 47, 52-53, 67, 74, 86-88). With concurrent sentences, Schulman and the Government emphasized that "in essence, the gamble of proceeding with two counts . . . [was Slocum] lost an additional $100 special assessment[.]" (*Id.* at 82).

Wooten also testified that Schulman believed that the two conspiracy counts were separate, but he could not recall whether the issue of a double jeopardy motion came up. Nor could he remember any other specific strategy discussions that were had with Slocum who, he stated, was "very involved in his case, more than any defendant or any client [Wooten] had." (*Id.* at 92-93). As local counsel, Wooten did not participate in opening, closing, voir dire, or questioning of any witnesses. (*Id.* at 94).

Burton, on the other hand, opined that, upon her review of the trial record and appellate decision, six witnesses testified to buying, selling, and transporting both heroin and oxycodone from/for Slocum, which she suggested revealed one agreement and, thus, one conspiracy. (*Id.* at 106-07, 109). Based upon those facts and the relevant precedent, Burton stated that she believed a motion to address the double jeopardy issue would have been appropriate and that Schulman's failure to pursue the same was either not strategic (*i.e.,* he failed to spot the issue) or was unsound strategy. (*Id.* at 111-13).

Based upon this evidence, Slocum asserts that Schulman's strategic justifications for not raising the double jeopardy issue were misguided and unreasonable under the relevant authority and facts of this case. His post-hearing brief states:

> [T]his reasoning was flawed. Mr. Slocum faced convictions for two counts of conspiracy, each carrying a term of incarceration. Should he go forward with two conspiracies, he faced conviction on two conspiracies. Had the double jeopardy motion been filed and granted, Mr. Slocum would have been facing conviction for one conspiracy. While the government and Mr. Schulman downplay the importance of multiple felony convictions because Mr. Slocum's sentences were run concurrently, it does not take away the fact that Mr. Slocum did not have to face conviction for two conspiracies, as those convictions violated the double jeopardy clause.

(ECF No. 274 at 7). He adds that "Schulman admitted that the only difference between the two counts in the indictment was the actual drug sold. In that instance, if the evidence is the same, it is far better to face one conviction than two, and it is counter to logic to suggest otherwise . . . . There is no benefit to Mr. Slocum at all." (*Id.*)

Slocum further asserts that Schulman's failure to make the double jeopardy challenge fell below an objective standard of reasonableness because his belief that the two drug types (heroin and oxycodone) constituted separate conspiracies was inconsistent with the well-established "totality of the circumstances" test in *MacDougall* and other existing authority. Thus, he contends that, due to the "factual overlap rather than the type of drugs involved," he was "required to raise the issue before the court." (*Id.* at 8). Thus, Slocum asserts that Schulman's strategic approach "made no sense and was unreasonable." *Freeman*, 24 F.4th at 326. (*Id.* at 8-9).

The Government, on the other hand, contends that "whether double jeopardy was implicated when a defendant charged with conspiring to distribute different drugs having different penalties was not settled, and was reflected in the District Court's dismissal of Slocum's 2255 petition." (ECF No. 273 at 6 and n.2). In essence, the Government asserts

11

that the facts of this case suggested that Slocum's "extensive operations and network" could "reasonably lead the jury to find that there were separate conspiracies under the totality of the circumstances," and that very finding was made by the presiding District Judge when he first denied this claim in Slocum's § 2255 motion. (*Id.* n.2; *see also* ECF No. 217 at 8). The Government also focuses on the difference in potential penalties.

On cross-examination, Mr. Hanks asked Schulman whether there were facts that "led him to conclude that a double jeopardy claim under the law at the time was not obvious[.]" Schulman responded:

> Yes. And I agree. And that point is well-taken that not just that it's different drugs and potentially different facts patterns, but that each of the drug counts contained different mandatory minimums, different guidelines and different maximums. So, I looked at it as very separate, even though I understand the Fourth -- and I respect the Fourth Circuit's opinion as to the definition of conspiracy.

(ECF No. 272 at 89). Then, on cross-examination of Burton, Mr. Hanks emphasized an existing split of authority within the Fourth Circuit concerning the application of the *Blockburger* "same evidence" test or the *MacDougall* "totality of the circumstances" test to multiplicitous prosecutions, and further identified a split of authority both within and outside the Fourth Circuit concerning the issue of whether separate drugs may be charged in separate conspiracies and overcome a double jeopardy claim. (*Id.* at 114-117). In essence, the Government asserts that the existing case law did not "sufficiently foreshadow" a requirement to make a double jeopardy claim under the circumstances.

Thus, the Government asserts that, given the legal landscape and facts of this case, Schulman made a "sensible, informed, and reasonable" tactical decision not to pursue a double jeopardy challenge. (ECF No. 273 at 6-7). Its brief further contends:

> If he had obtained an acquittal on Count One, Slocum would have avoided the mandatory minimum and could potentially have received a lesser

12

overall sentence. If he had obtained an acquittal on Count Two, Slocum would have avoided a $100 special assessment. If the strategy failed, as it did, Schulman was reasonably confident that the sentences on Count One and Two would be imposed concurrently – a confidence that was affirmed by the sentence imposed.

(*Id*. at 7). Accordingly, the Government argues that Schulman's "failure to raise a double jeopardy claim does not establish deficient performance under *Strickland*" and this Court should defer to counsel's reasoned strategic choice. (*Id*. at 2, 7).

Having heard the evidence developed at the evidentiary hearing, and upon an exhaustive review of the record and relevant legal authority, the undersigned proposes that the presiding District Judge **FIND** that Schulman's failure to raise a double jeopardy challenge before Slocum's trial fell below an objective standard of reasonableness. Despite offering a strategic basis for not making such a challenge, at bottom, Schulman's strategy was unreasonable because the facts and circumstances justified challenging the two conspiracy counts and the failure to do so exposed Slocum to a second felony conspiracy conviction, notwithstanding his concurrent sentences, and barred him from raising such a claim on direct appeal. As aptly noted in Slocum's post-hearing brief:

> The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. *See Benton v. Maryland*, 395 U.S. 784, 790-791, 23 L. Ed. 2d 707, 89 S. Ct. 2056 (1969); *Sibron v. New York*, 392 U.S. 40, 54-56, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968). Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment." *Id.*, at 864-865.
>
> *Rutledge v. United States*, 517 U.S. 292, 302 (1996). *See also Benton v. Maryland*, 395 U.S. 784 (1969).

(ECF No. 274 at 10).

Moreover, even given the alleged split of authority or lack of clarity in the case law concerning whether different drugs can support different conspiracy counts, Schulman's reliance on the evidence supporting two conspiracies in this case was misguided. The Fourth Circuit's opinion held that "[t]he level of overlap in the facts underlying the two charged conspiracies leads us to conclude that there was one overall agreement with multiple objects – to distribute more than one kilogram of heroin and to distribute a quantity of oxycodone." *Slocum*, 106 F.4th at 315. Notwithstanding Schulman's position that there was a distinction between co-conspirators who bought or distributed heroin versus pills from/for Slocum, as noted by the Fourth Circuit's opinion, the evidence "does not demonstrate separate agreements relating to each drug. Instead, it reveals common co-conspirators, methods, and goals between the charged conspiracies[, which] . . . read in context . . . suggests a single conspiracy, not two." *Id.* at 316. The appellate court recounted specific witness testimony concerning the various drug transactions indicating that multiple co-conspirators bought, sold, or transported both heroin and oxycodone from/for Slocum, and that the limited evidence concerning those who dealt with only one drug was insufficient to find two separate conspiracies. *Id.* Thus, the Court found that "[u]ltimately, the substantial overlap in the time periods, locations, co-conspirators and nature and scope of the prosecuted activities suggests there was one overall agreement to distribute heroin and oxycodone." *Id.*

Under the totality of the circumstances, it was nonsensical and unreasonable not to recognize and/or pursue a double jeopardy challenge, removing the deference provided to Schulman's tactical decisions. *See Freeman*, 24 F.4th at 326. Although our appellate court had not then applied *MacDougall* to a multiplicitous drug conspiracy indictment

(versus a successive prosecution), "by Slocum's trial, *five* circuit courts had held in published opinions that a court should apply a *MacDougall*-like multifactor test to determine whether the defendant's indictment charging two separate drug conspiracy counts, was multiplicitous[]" and "[t]he Supreme Court has long prohibited one conspiracy as two." *Slocum*, 106 F.4th at 318 (Diaz, C.J., concurring). As noted above, the facts herein suggested one conspiracy, not two. *Id.*

Thus, the undersigned proposes that the presiding District Judge **FIND** that it was unreasonable for Schulman not to challenge the two conspiracy counts on this basis to at least preserve the issue for appeal and avoid a second, duplicative felony conviction and his performance was, therefore, deficient. As previously noted, the Fourth Circuit has already found that Slocum was prejudiced by the double jeopardy violation. *Slocum*, 106 F.4th at 318. Consequently, Slocum has established both prongs of the *Strickland* ineffective assistance of counsel standard and has demonstrated a violation of his Sixth Amendment rights that warrants relief under 28 U.S.C. § 2255.[2]

## IV. RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Slocum's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 165) solely on his remanded claim of ineffective assistance of counsel and grant relief, as appropriate, under 28 U.S.C. § 2255(b).

---

[2] Slocum's post-hearing brief also asserts that Schulman failed to seek a jury instruction based upon the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013). Not only does this assertion appear to exceed the scope of the Fourth Circuit's mandate for remand, it appears to lack merit because the second superseding indictment contained the threshold drug quantity necessary to impose the mandatory minimum sentence on Count One (and there was no mandatory minimum on Count Two) and the jury was instructed that they needed to find that Slocum conspired to distribute more than one kilogram of heroin, which satisfied that essential element of the offense to justify the enhanced sentence. (ECF No. 148 at 972-74). At any rate, given the recommendation that Slocum's § 2255 motion be granted based on ineffective assistance of counsel on double jeopardy grounds, it is unnecessary to further address the merits of this additional assertion.

15

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days from the date of filing this Proposed Findings and Recommendations within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendations to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on the opposing party and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendations, to mail a copy of the same to Slocum, and to transmit a copy to counsel of record.

November 24, 2025

Dwane L. Tinsley
United States Magistrate Judge